UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MARK ANTHONY PEREZ,

    Plaintiff,

v.

STEVEN RENO, et al.,

    Defendants.

CIVIL ACTION NO. 3:22-cv-01021

(SAPORITO, M.J.)

# MEMORANDUM

This is a fee-paid prisoner civil rights action, brought under 42 U.S.C. § 1983. The plaintiff, Mark Anthony Perez, appearing through counsel, asserts a failure-to-protect claim for damages against the lone remaining defendant, Steven Reno, a correctional officer at SCI Frackville, a state correctional facility where the plaintiff was incarcerated at the time of the events giving rise to this action. The plaintiff is currently incarcerated at a different prison, SCI Somerset.

The defendant has filed a motion to dismiss or for summary judgment. (Doc. 28.) That motion is fully briefed and ripe for decision. (Doc. 29; Doc. 34; Doc. 36; Doc. 38; Doc. 39; Doc. 40; Doc. 41;[1] *see also* Doc.

---

[1] Doc. 41 appears to be a second copy of Doc. 39.

33.)

Reno contends that he is entitled to summary judgment on the plaintiff's § 1983 claim against him because Perez failed to properly exhaust available administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Before bringing a § 1983 action concerning prison conditions, a prisoner must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); see also Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000).

Moreover, § 1997e(a) requires "proper" exhaustion of administrative remedies, meaning strict compliance with grievance filing

deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89–95 (2006). "A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *McKinney v. Kelchner*, No. 1:CV-05-0205, 2007 WL 2852373, at *3 (M.D. Pa. Sept. 27, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 227–32 (3d Cir. 2004)). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88) (citation omitted); *see also Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) ("Section 1997e(a) does not delineate the procedures prisoners must follow."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not [§ 1997e(a)], that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. "The only constraint is that no prison system may establish a requirement inconsistent with the federal policy underlying § 1983 and § 1997e(a)." *Strong*, 297 F.3d at 649. Thus, it

follows that "grievances must contain the sort of information that the administrative system requires." *Strong*, 297 F.3d at 649. But,

> if prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."

*Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Strong*, 297 F.3d at 650).

In adopting DC-ADM 804, the Pennsylvania Department of Corrections ("DOC") has established a multi-stage administrative remedy process through which an inmate may seek formal review of "problems or other issues arising during the course of their confinement." (Def. Ex. 1, at 1 (DC-ADM 804 Policy Statement), Doc. 29-1.) As we have previously summarized it, "DC-ADM 804 provides a three-tiered grievance process: (1) an initial review by a grievance officer; (2) an appeal to the facility superintendent; and (3) an appeal to the statewide chief grievance officer." *Adams v. Giroux*, CIVIL ACTION NO. 1:15-cv-01321, 2016 WL 8229205, at *6 (M.D. Pa. Dec. 15, 2016). (*See also* Def. Ex. 1, at 1-1 to -8, 2-1 to -9 (DC-ADM 804 Procedures Manual §§ 1, 2 (eff.

May 1, 2015)).) DC-ADM 804 sets forth various substantive and procedural requirements for inmate grievances, including requirements that the initial grievance "identify individuals directly involved in the event(s)," "specifically state any claims he/she wishes to make concerning violations of [DOC] directives, regulations, court orders, or other law," and specifically request any "compensation or other legal relief normally available from a court." (Def. Ex. 1, at 1-2 (DC-ADM 804 Procedures Manual § 1(A)(11)(b), (c), (d)).)

Here, the defendant relies on all three of these provisions. First, he argues that Perez's initial grievance failed to identify Reno by name. But, under Third Circuit precedent, it is clear that the content of Perez's initial grievance was sufficient to identify defendant Reno for the purposes of the PLRA exhaustion requirement. As the Third Circuit has observed, "[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Williams v. Beard*, 482 F.3d 637, 640 (3d Cir. 2007) (quoting *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *see also Travillion v. Wetzel*, 765 Fed. App'x 785, 789 (3d Cir. 2019) (per curiam) (quoting *Williams*). The initial grievance described a violent incident in which another inmate

viciously attacked Perez in his own cell around 7:30 p.m. on July 3, 2020, stabbing Perez in the head, back, arms, and neck about 30 times. Although the grievance did not *specifically* identify Reno by name, it expressly described an interaction with "the 2–10 shift officer" immediately after the attack, and it is undisputed that Reno is the officer referenced. (*See* Def. Ex. 2, at 1, 3, Doc. 29-2; Pl. Ex. 2, Doc. 36-3; Pl. Ex. 3, Doc. 36-4; Pl. Ex. 4, Doc. 36-5.) This is sufficient to comply with the identification requirement of DC-ADM 804. *See Williams*, 482 F.3d at 638, 640 (finding grievance describing the "'2-10' staff of the cell block" was sufficient to satisfy DC-ADM 804's identification requirement); *Travillion*, 765 Fed. App'x at 789 (finding grievance describing "SCI-Rockview staff and/or administration" was sufficient to satisfy DC-ADM 804's identification requirement).

Second, the defendant argues that Perez's initial grievance failed to expressly articulate an Eighth Amendment failure-to-protect claim. But, "[a]lthough the prison grievance policy directs an inmate to 'specifically state any claims he/she wishes to make concerning violations of [DOC] directives, regulations, court orders, or other law[,]' it does not require an inmate to identify all of the specific legal theories that might apply to the

facts alleged in his or her grievance." *Beenick v. Lefebvre*, No. 4:14-cv-01562, 2016 WL 5402249, at *8 (M.D. Pa. July 29, 2016) (citation omitted), *report & recommendation adopted by* 2016 WL 5376120 (M.D. Sept. 26, 2016), *aff'd*, 684 Fed. App'x 200 (3d Cir. 2017); *see also id.* at *8 n.6. "As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA." *Jackson v. Ivens*, 244 Fed. App'x 508, 513 (3d Cir. 2007) (per curiam). Here, there is clearly a shared factual basis between Perez's grievance and his amended complaint. Whether he wrote the magic words "Eighth Amendment" or "failure to protect" in his grievance is immaterial.

The defendant's third argument, however, is well taken. The defendant relies on the requirement that an inmate grievance specifically request any "compensation or other legal relief normally available from a court." (Def. Ex. 1, at 1-2 (DC-ADM 804 Procedures Manual § 1(A)(11)(d)).). In this civil action, Perez seeks monetary damages only. (*See* Doc. 20, at 6.) But nowhere in his initial grievance did Perez articulate a request for monetary compensation. Thus, the defendant contends that Perez failed to properly exhaust all available

administrative remedies prior to filing suit.

On July 10, 2020, Perez submitted a formal inmate grievance, logged by prison officials as Grievance No. 877753. In Block A of the preprinted DC-ADM 804 form, the inmate was instructed to:

> Provide a brief, clear statement of your grievance. Additional paper may be used, maximum two pages (one DC-804 form and one one-sided 8½" x 11" page). State all relief you are seeking.

In response, Perez wrote:

> On 7-3-20 I was housed at S.C.I. Frackville (ATA) for court. On or around 7:30 pm (2–10) shift I exited the shower room and when I walked in to my cell (CA-30-1) an inmate walked in behind me[,] brutally assaulting me, stabbing me with a big, sharp metal object in my head, my back, arms, neck area about 30 times[,] leaving me with numerous holes all over my body, collapsed lung, two (2) broken ribs and bruises everywhere. When the inmate left my cell the 2–10 shift officer that was working that unit (CA) asked me to show him my toe on my foot out of no-where[,] which I found to be very awkward[,] especially due to the fact that I was bleeding from everywhere else. I am in fear for my life and want to be separated from all inmates and staff that were involved in this incident.

(Def. Ex. 2, at 1; Pl. Ex. 4.) In Block B of the preprinted DC-ADM 804 form, the inmate was instructed to:

> List actions taken and staff you have contacted, before submitting this grievance.

In response, Perez wrote:

- 8 -

> CO[] Batista 2–10 shift at Frackville is familiar with this whole situation.

(Def. Ex. 2, at 1; Pl. Ex. 4.)

This initial grievance, submitted by Perez while he was housed in the infirmary at another prison, SCI Dallas, was initially rejected with instructions that he resubmit it to officials at SCI Frackville. (Def. Ex. 2, at 2.) On July 22, 2020, Perez resubmitted his grievance to officials at SCI Frackville, where it was logged by prison officials as Grievance No. 881966. In his second, resubmitted grievance, Perez wrote an identical statement in Block A, copying the original grievance form verbatim. (*Id.* at 3.) In Block B, Perez wrote:

> C.O. Batista 2–10 shift at S.C.I. Frackville.
>
> Grievance #877753
>
> Directing matters to appropriate facility.

(*Id.*) This is the entire substance of Perez's initial grievance.[2]

---

[2] On October 13, 2020, the assigned grievance officer upheld the grievance in part and denied it in part, reporting that a formal separation had been placed between Perez and several inmates involved in the incident, but finding no grounds for a separation between Perez and any staff members. (Def. Ex. 2, at 5; Pl. Ex. 5, Doc. 36-6.) Perez appealed to the facility manager of SCI Frackville, and the initial review response was upheld by the facility manager. (Def. Ex. 2, at 6–7, 9; Pl. Ex. 6, Doc. 36-7; Pl. Ex. 7, Doc. 36-8.) Perez never submitted an appeal to the
(continued on next page)

Because Perez failed to specifically request monetary compensation in the administrative grievance process, he procedurally defaulted and failed to exhaust available administrative remedies with respect to his claim for monetary damages, and thus he is barred from bringing a claim for money damages against Reno in this action. *See Johnson v. Wireman*, 809 Fed. App'x 97, 99 (3d Cir. 2020); *Wright v. Sauers*, 729 Fed. App'x 225, 227 (3d Cir. 2018); *Brooking v. D.O.C.*, Civil Action No. 3:15-cv-02134, 2023 WL 4674334, at *3 (M.D. Pa. Apr. 12, 2023), *report & recommendation adopted by* 2023 WL 4672412 (M.D. Pa. July 20, 2023), *appeal filed* No. 23-2445 (3d Cir. Aug. 3, 2023); *Miller v. Little*, Civil Action No. 3:21-cv-01941, 2023 WL 2529553, at *3 (M.D. Pa. Mar. 15, 2023), *appeal filed*, No. 23-2037 (3d Cir. June 5, 2023); *Harris v. Eckard*, No. 1:15-cv-1411, 2018 WL 672153, at *2 (M.D. Pa. Feb. 2, 2018).

In his brief in opposition, the plaintiff argues only that he was never properly served with a copy of the facility manager's appeal response. But Perez's receipt of the facility manager's appeal response is simply immaterial, as his initial grievance itself failed to request any monetary

---

statewide chief grievance officer, and he contends here that he never received a copy of the facility manager's appeal response.

compensation. His failure to exhaust available remedies is based on a fatal defect in his original, initial grievance, not on a failure to perfect his final administrative appeal to the statewide chief grievance officer.

Based on the undisputed facts of record, viewed in the light most favorable to the non-moving plaintiff, we find that Perez failed to properly exhaust available administrative remedies with respect to his § 1983 failure-to-protect claim against the remaining defendant, Steven Reno. Accordingly, the defendant's summary judgment motion will be granted and the clerk will be directed to enter judgment in favor of defendant Reno and against the plaintiff.

An appropriate order follows.

Dated: September __15__, 2023       _/s/ Joseph F. Saporito, Jr._
                                                             JOSEPH F. SAPORITO, JR.
                                                             United States Magistrate Judge